UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
------------------------------------------------------------------X
MONIQUE SYKES, REA VEERABADREN,
KELVIN PEREZ and CLIFTON ARMOOGAM,
individually and on behalf of all others similarly
situated,

                Plaintiffs,

- against -

MEL S. HARRIS AND ASSOCIATES, LLC, et al.

                Defendants.
------------------------------------------------------------------X

**REPLY BRIEF IN FURTHER SUPPORT OF PETITION FOR LEAVE TO SEEK INTERLOCUTORY APPEAL OF DECISION CERTIFYING TWO CLASSES**

**Docket Nos.: 13-1320; 13-1323; 13-1324**

**BABCHIK & YOUNG, LLP**
**Attorneys for the Samserv Defendants**
**200 East Post Road, 2nd Floor**
**White Plains, New York 10601**
**(914) 470-0001**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................... i

PRELIMINARY STATEMENT ............................................................. 1

    Plaintiffs' Relentless References to Certificates of Merit
    Demonstrates that Samserv is Not a Proper Class Defendant ............... 1

    Samserv Was Not Involved in Collecting Any Debt ........................... 2

    Samserv Can Not Be a Proper Defendant Where It Did Not
    Serve Process ........................................................................... 2

ARGUMENT .............................................................................................. 3

    There is Neither Typicality Nor Commonality Regarding
    Service of Process ...................................................................... 3

    Plaintiffs Recognize that Absent Court Dictat, Certification
    Is Improper ............................................................................... 4

    Whether the Debts Were Owed is Relevant to Samserv as
    Class Defendant ......................................................................... 6

    Samserv Can Not Be a Proper Defendant Where It Did Not
    Serve Process ........................................................................... 7

CONCLUSION .......................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Abene v. Jaybar*, 802 F. Supp. 2d 716; (E.D. La. 2011) .................................. 9

*Anza v. Ideal Steel Supply Corporation*, 547 U.S. 451 (2006) .................... 8, 9

*Hartford v. Beaver*, 466 F.3d 1289 (11th Cir. 2006) ........................................ 6

*Hevesi v. Citigroup*, 366 F. 3d 70, 77 (2d Cir. 2004) .................................. 8, 9

*In re "Agent Orange" Prod. Liability Litigation*, 818 F. 2d 145, 166-67 (2d Cir. 1987) ................................................................................................ 3

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ........................................ 9

## Statutes

Fed. R. Civ. P. 23(f) .......................................................................................... 6

FDCPA § 1692a(6)(D) .................................................................................... 10

**Preliminary Statement**

Samserv, Inc.[1] submits this Reply[2] in further support of its application for leave to pursue an interlocutory appeal from the Opinion that certified two separate classes. Plaintiffs submitted a single Brief in opposition to three separate motions (the "Opposition") and, in so doing, proved that Samserv is not a proper class defendant. The Opposition is divorced from the reality of the factual record and legal authority that demonstrates why the Trial Court erred vis-à-vis Samserv.[3]

*Plaintiffs' Relentless References to Certificates of Merit*
*Demonstrates that Samserv is Not a Proper Class Defendant*

Plaintiffs' incessant harping on certificates of merit as the main (if not sole) reason why class certification was proper proves that Samserv should never have been included as a class defendant. Plaintiffs forthrightly concede that the "core" of their case has "always been...[the] affidavits of merit."[4] Plaintiffs refer to

---

[1] This petition is brought by Samserv, Inc., William Mlotok, and individual defendants, Lamb, Mosquera and Andino (the "Samserv Defendants" or "Samserv"). These individuals were independent contractors, not employees of Samserv, Inc., and not controlled or directed by Samserv, Inc or its principal. service by "Samserv" thus refers to service by independent contractors.

[2] Plaintiffs have consented to Samserv's submission of this Reply brief.

[3] Samserv does not suggest that the District Court properly properly certified a class regarding Mel Harris or Leucadia.

[4] Opposition, page 3.

affidavits of merit dozens of times (including at pages 2, 3,8, 9,10, 11, 12, 15, 20 and 24), but to affidavits of service at pages 2 and at 11-12.

The Opposition demonstrates that plaintiffs and the Trial Court improperly threw Samserv into an undifferentiated group of "defendants" and included Samserv as a class defendant in a case that relies virtually exclusively on affidavits of merit even though Samserv had nothing to do with them.

### *Samserv Was Not Involved in Collecting Any Debt*

It is beyond peradventure that Samserv was just the process server on <u>some</u> of the debt actions maintained by Mel Harris on behalf of Leucadia. Samserv did not have <u>any</u> role in actually collecting debts through the preparation of pleadings, affidavits of merit, restraint of bank accounts, etc.

Service of process is only the first step that must be taken before a debt can be collected, including via an application for a default judgment. There are numerous "safeguards" that are put in place to prevent improper judgments. The District Court improperly included Samserv as a class defendant even though it had <u>nothing to do</u> with most of the events that allegedly led to improper judgments.

### *Samserv Can Not Be a Proper Defendant Where It Did Not Serve Process*

This case involves Mel Harris' collection of debts on behalf of Leucadia via lawsuits that were commenced via service of process. Plaintiffs purport to challenge that service of process but have not bothered to sue all the process

2

servers. Instead, they sued one of the process serving companies (Samserv), yet now seek to hold Samserv responsible for allegedly deficient service of process in cases where Samserv did not serve process.

## Argument

A party can only be deemed to be a proper "class defendant," if there are "common" or "typical" questions of law or fact involving the class and the proposed class defendant. Thus, a class is proper vis-à-vis a defendant where the named plaintiffs share a common question of law or fact with the grievances of the prospective class <u>as concerns the defendant in question</u>. *See In re "Agent Orange" Prod. Liability Litigation,* 818 F. 2d 145, 166-67 (2d Cir. 1987).

### *There is Neither Typicality Nor Commonality Regarding Service of Process*

Plaintiffs' case rests upon the supposition that defendants acted in a "uniform" manner. However, plaintiffs have <u>still</u> not identified <u>anything</u> common, typical or uniform about service. Plaintiffs argue that "electronic records document Defendants' uniform pattern and practice of creating hundreds of thousands of materially identical, fraudulent affidavits of merit and affidavits of service, which are in turn used to obtain default judgments." (Opposition, page 2.)

This description is patently false and objectionable. First, note plaintiffs' improper use of the single descriptive "Defendants" to suggest that Samserv was

3

involved in: (i) the affidavits of merit; or (ii) obtaining and enforcing default judgments. <u>Nothing</u> in the record suggests that Samserv had such involvement.

Second, note how plaintiffs slyly suggest the existence of "hundreds of thousands of materially identical…affidavits of service." But the reality is that the affidavits of service, *and the service of process they memorialize*, are not at all "materially identical." To the contrary, the named plaintiffs' tales of how they were served and why they contest that service are as different from each other as night and day.

Here, the allegedly deficient services of process were not "carried out in a uniform manner" nor did they have a "similar impact upon class members." Instead, as the four class representatives demonstrate, each instance of service was virtually *sui generis*. Alleged identity theft (Armoogam) is vastly different from possibly serving the "wrong" individual who shared the name as the debtor (Perez) and both situations differ from cases in which a debtor denied living at particular address, despite records demonstrating that they <u>did</u> or where a debtor changed their story as to where they were when service was made (Sykes and Veerabadren).

***Plaintiffs Recognize that Absent Court Dictat, Certification is Improper***

Plaintiffs acknowledge (Opposition pages 11-12), that there are "question[s]" about service and "potentially individualized issues relating to

4

service." Yet, Samserv was included as a class defendant despite evidence of proper service and/or efforts to obtain proper service for the named plaintiffs.

Plaintiffs (and the District Court), attempt to gloss over this glaring flaw in the Class Certification decision by concluding that there was "substantial support" for plaintiffs' conclusory claim that Samserv "regularly" engaged in "sewer service" and, consequently, Samserv is a proper class action defendant.

However, what, exactly is this "substantial support"? Nothing more than a few <u>hundred</u> anomalies (or, more likely, clerical or typographical errors), compared with the <u>tens of thousands</u> of services or attempted services about which no objection was raised. Samserv was thus included as a class defendant despite the absence of statistical evidence of improper service in over 99% of the cases.

In their Opposition (page 12), Plaintiffs forthrightly admit that, despite the absence of any compelling evidence about the vast, vast majority of Samserv's work, they anticipate making a motion to have <u>all</u> of Samserv's processes deemed, by judicial fiat, to be "sewer service."[5] Plaintiffs thus concede that *without* such a blunderbuss order (which is unsupported by the evidence), the trial court will *have to* conduct tens of thousands of individualized service assessments and traverse hearings, all to see if Samserv had any involvement in causing any damage to any

---

[5]  Plaintiffs' claim that there was "spoliation" is unsupported by anything in the Record. It is improper for plaintiffs to argue that they are entitled to an Order that all of Samserv's services were "sewer service" based on conjecture and speculation.

5

particular debtor. This is the very opposite of a "class." Plaintiffs' claim that they are entitled to class certification now, based on what a court <u>might</u> do at some future time, is improper.

Plaintiffs' plan to circumvent their burden of proof by seeking an order that all of Samserv's services were made via the "sewer" demonstrates that including Samserv as a class defendant is, indeed, a virtual "death knell" and, as a practical matter, ends the case as far as Samserv is concerned.[6]

### *Whether the Debts Were Owed is Relevant to Samserv as Class Defendant*

Plaintiffs argue that whether or not the debtors actually owed the debts is irrelevant to the discussion of class certification. This issue is quite relevant to whether Samserv is a proper class defendant. Plaintiffs' theory appears to be that <u>if</u> the debtors had been properly served, <u>then</u> they would have appeared in Court, there would not have been a default, and the end result would have been different. In other words, plaintiffs contend that the alleged absence of proper service <u>caused</u> the debtors to be damaged.

---

[6] At page five of its moving brief, Samserv noted how the Eleventh Circuit correctly, and colloquially, pointed out the "basic truth about class action litigation: the fight over class certification is often the whole ball game." *Hartford v. Beaver*, 466 F.3d 1289 (11th Cir. 2006.) Plaintiffs' argument, <u>made in their Opposition</u>, that they anticipate seeking rulings to prevent Samserv from defending its service of process, warrants consideration of the "death knell" argument as to why Samserv is entitled to 23(f) review at this time.

However, this turns logic (and the Record), on its head. If the debtors had owed the debts, than regardless of service, they likely would have ignored the summons (just as they ignored prior attempts to collect the debts). For example, named plaintiff Sykes admitted that she received (at the same address as was on other correspondence and the summons and complaint), a Marshall's Notice that her property was subject to seizure. She responded to the notice but not the correspondence or pleadings.

Likewise, at deposition, Ms. Sykes conceded that she <u>absolutely</u> owed the debt and, after making some payments, she simply stopped making any payments. (Exhibit "B," pages 67-68). In other words, it is not, apparently, uncommon for debtors to ignore debts. Defaults do, indeed, happen, on daily basis, even with "gold plated" service of process. Individualized assessments will be required to determine if this is the case.

### *Samserv Can Not Be a Proper Defendant Where It Did Not Serve Process*

Plaintiffs argue (Opposition page 20), that limiting the class to individuals who were served by Samserv would make the classes "under inclusive" since it would, supposedly, not include all those debtors who had a default entered against them based upon the allegedly false affidavits of merit. Regardless of whether this argument makes sense in analyzing whether Mel Harris or Leucadia are proper class defendants, it has absolutely no bearing on whether <u>Samserv</u> is a proper class

7

defendant.[7] Plaintiffs do not claim that Samserv had any role or involvement with the affidavits of merit.

Plaintiffs next claim that, under RICO, Samserv can be held responsible for the damages caused by other members of the putative "enterprise." This puts the cart before the horse as Samserv's theoretic liability for the harm caused by other members of the "enterprise" is the *result of* Samserv's alleged membership in the enterprise; it is the *consequence* of that membership. However, this potential liability cannot be proof of the *existence* of the enterprise. In other words, plaintiffs are confusing *effect* (what might happen to Samserv as a result of its membership in the alleged "enterprise"), with issues of *cause* (whether or not Samserv is a member of any "enterprise.")

The cases plaintiffs cite are unpersuasive. In *Anza v. Ideal Steel Supply Corporation*, 547 U.S. 451 (2006), Ideal Steel asserted RICO claims against Anza (a competitor), claiming that Anza failed to charge sales tax. The Court concluded that Ideal Steel could <u>not</u> maintain a RICO claim because Ideal Steel had failed to demonstrate that Anza's alleged RICO violation caused Ideal Steel's harm.

Here, as even plaintiffs admit, the "core" cause of the harm they allegedly sustained were the affidavits of merit and other actions taken to obtain and enforce defaults: actions that Samserv was wholly uninvolved with.[8]

---

[7] 23(f) review can be granted to one set of defendants but denied as to another. *Hevesi v. Citigroup,* 366 F. 3d 70, 77 (2d Cir. 2004.)

8

Plaintiffs' reliance upon *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), is equally misplaced.[9] The lower courts dismissed Sedima's RICO suit, holding, in part, that Sedima failed to allege a "racketeering injury." The Supreme Court reversed, holding, in part, that RICO imposed no such requirement.

Plaintiffs cite specific language from page 495; to wit, "[i]f the defendant engages in a pattern of racketeering activity… and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim." However, this has <u>nothing</u> to do with plaintiffs' claim that Samserv can be found liable for alleged incidents of sewer service where Samserv was not the process server. Rather, the quoted language was part of the Court's analysis that "[t]here is no room in the statutory language for an additional, amorphous 'racketeering injury' requirement." *Sedima*, 473 U.S. at 495.

Here, there is simply no basis, in law or fact, for plaintiffs' outrageous claim that Samserv -- which is no more or less than a process server -- is a proper class

---

[8] Plaintiffs point specifically to *Anza* at 457, where the court explained that Ideal Steel could not maintain its claim based on statutory language barring "conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity." Here, since Samserv did not serve many of the putative class members, Samserv has not "participat[ed] in the conduct of an enterprise's affairs through a pattern of racketeering activity."

[9] In fact, plaintiffs' reliance upon Sedima is improper as at least one court has noted that *Sedima* has, at least in part, been superseded by statute. *Abene v. Jaybar*, 802 F. Supp. 2d 716; (E.D. La. 2011)(downplaying the Supreme Court's statement in *Sedima* that "RICO is to be read broadly".)

9

defendant which can be held liable for failure to effectuate service upon people whom Samserv was never hired to serve.

Finally, plaintiffs' response to Samserv's argument that Samserv has defenses available to it that the other defendants do not -- the FDCPA <u>excludes</u> "any person while serving or attempting to serve legal process"[10] -- is unpersuasive. Plaintiffs argue that the viability of this defense is "common to all class members." However, this defense is not common since, as discussed above, Samserv did not serve all class members. Moreover, application of the defense would require individualized assessments of the particulars of each service to determine if Samserv was acting as process server (where the defense would apply), as opposed to whether or not Samserv was acting as something more than an innocent process server (as plaintiffs alleged in their complaint.)

### Conclusion

Samserv requests leave to proceed with an interlocutory appeal.

Dated:     White Plains, New York
             May 6, 2013

                                       BABCHIK & YOUNG, LLP

                        By: _____
                                       Jordán Sklar (JS 3631)
                                       Attorneys for the Samserv Defendants
                                       200 East Post Road, 2nd Floor
                                       White Plains, New York 10601

---

[10]    FDCPA §1692a(6)(D).